UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL McCLAIN,<br>ANNE PRAMAGGIORE,<br>JOHN HOOKER, and<br>JAY DOHERTY | No. 20 CR 812<br><br>Hon. Harry D. Leinenweber |

**GOVERNMENT'S MOTION TO ADMIT EVIDENCE
OF McCLAIN'S INVOLVEMENT IN DIRECTING
MAJOR GAMING LEGISLATION AS MADIGAN'S AGENT**

The government intends to call Representative Robert Rita as a witness on Monday, March 20, 2023. Representative Rita has been a member of the Illinois House of Representatives since 2003. The government anticipates that Representative Rita will testify about a number of relevant topics.

One of them is Rita's experience working with defendant Michael McClain on the crafting of major gaming legislation. Specifically, Rita, the sponsor of a significant piece of gaming legislation that passed in 2019, is expected to testify that he took direction concerning the development and passage of this major legislation from McClain—who Rita understood to be providing direction on the legislation at Madigan's behest.

Rita's testimony regarding McClain's role as Madigan's surrogate with respect to the gaming legislation is highly relevant because it not only establishes that McClain worked on Madigan's behalf and acted as his agent during the period of the

1

charged conspiracy, but it also serves to explain why Rita, who also sponsored the Future Jobs Energy Act ("FEJA"), accepted McClain's direction regarding a proposed amendment to FEJA with the understanding it they came with Madigan's approval. This testimony thus directly rebuts the inaccurate claim made by certain defendants in opening statements that Madigan had no involvement with the passage of FEJA. The government should be able to present evidence showing the way Madigan used McClain, his agent, to help move legislation, including two major pieces of legislation sponsored by Rita: gaming legislation and FEJA. In short, Rita's testimony about gaming is direct evidence[1] of the charged crimes and will not prejudice the defendants.

## Anticipated Testimony and Evidence

As described below, Representative Rita's work with McClain on gaming legislation is relevant to prove that McClain acted as Madigan's agent to help move ComEd's FEJA legislation. These are the most significant pieces of legislation Representative Rita sponsored during the charged conspiracy, and in both instances McClain acted as Madigan's agent in guiding Rita.

---

[1] The Court previously ruled that the government may not introduce its proposed Rule 404(b) evidence absent permission from the Court, although the Court observed that "the status of the current record does not permit the Court to decide to admit at this time." Dkt. 161 at 2. The government does not view evidence of gaming legislation as Rule 404(b) evidence, but presents this motion in an abundance of caution.

2

*Rita's Sponsorship of FEJA.* As relevant to this motion, the government anticipates that Representative Rita would testify as to the following regarding FEJA:

- In 2014 or 2015, a ComEd Government Affairs employee asked Representative Rita to sponsor a ComEd bill. Rita agreed. In 2016, the ComEd bill was combined with two other pending bills (one related to Exelon and one related to clean energy). Those three bills ultimately became FEJA, which passed on December 1, 2016. Rita was the chief sponsor of FEJA in the Illinois House of Representatives.

- When he became FEJA's sponsor, Rita had already been working with McClain for several years on gaming legislation (discussed below) and understood that McClain spoke on behalf of Madigan. This context is critical to understanding events that occurred on the day of FEJA's passage, December 1, 2016. That day, Fidel Marquez, on behalf of ComEd, asked Rita, as the sponsor of the bill, to adopt an amendment to FEJA. Rita felt as though ComEd was thrusting the amendment upon him without notice, and he initially opposed the amendment. McClain then came to the State Capitol building to talk to Rita. McClain told Rita to adopt the amendment and said words to the effect of it was "okay to do it." Based on Rita's prior experience with McClain with gaming legislation, Rita understood McClain's statement to mean that if he adopted the amendment, he would not go against Madigan's wishes or ComEd's wishes. After talking to McClain, Rita moved to the adopt the amendment. Later that

3

day, FEJA passed in the Illinois House of Representatives in a close vote, with the amendment.

*Rita's Sponsorship of Gaming Legislation.* The government anticipates that Representative Rita would testify, in summary, as to the following regarding the gaming legislation:

- In the spring of 2013, Representative Rita met with Speaker Madigan in Madigan's office in the Capitol. During the meeting, Madigan told Rita that Rita would sponsor a major gaming bill. Madigan did not tell Rita why he (Rita) was selected as sponsor. Madigan told Rita that Madigan had an unspecified conflict with the gaming bill. At the end of the meeting, Madigan walked Rita out of his office and McClain was located near the doorway. Madigan pointed to McClain and said something to the effect of, "he will guide you" or "he will be your contact," referring to McClain. Rita understood this to mean that McClain would be his point of contact on the gaming bill because Madigan had a conflict. It was clear to Rita that Madigan had arranged for McClain to be there and to guide Rita on the legislation.

- The gaming bill was the first major piece of legislation that Rita had sponsored. Rita felt that McClain's assistance would be helpful, particularly because the gaming bill involved a lot of stakeholders and was potentially worth hundreds of millions of dollars. Rita understood that McClain would guide Rita, consistent with Madigan's desired outcome for the gaming legislation.

- After his meeting with Madigan in spring 2013, Rita continued to work with McClain on the gaming bill until it passed in 2019. Over those six years, Rita spoke over the phone and had meetings with McClain about the gaming bill. During a meeting with McClain, McClain told Rita words to the effect of, "The Speaker has me on special assignments." Rita understood this to mean that the gaming legislation was one of McClain's special assignments from Madigan.

- In late 2016, soon after FEJA passed, Rita heard that McClain was retiring. When Rita heard this, he wondered whether McClain would still guide him on the gaming bill. At a meeting between Rita and Madigan, Rita asked Madigan who would advise Rita about the gaming bill after McClain's retirement. Madigan did not respond, but the next day McClain called Rita and told Rita that he had talked to "our Friend," meaning Madigan. Soon thereafter, McClain and Rita met. Rita understood from his phone conversation and meeting with McClain that McClain would continue to guide Rita on the gaming bill. Rita then continued to work with McClain on the gaming bill.

- While working with McClain on the gaming bill, McClain gave Rita instructions and guidance on how to handle issues related to the legislation. Rita understood that McClain was speaking on Madigan's behalf and that these instructions came from Madigan.

- The gaming legislation ultimately passed in 2019.

In addition to this testimony, the government seeks to publish the following five wire interceptions and accompanying transcripts during Rita's testimony, which relate to gaming: Government Exhibit ("GX") 94, GX 97, GX 105, GX 144, and GX156. Each of these recorded calls, with the exception of GX 97, are between McClain and Rita. The calls corroborate Rita's testimony that McClain gave direction to Rita on behalf of Madigan in connection with the gaming legislation. In GX 156, for example, McClain told Rita, "I talked to a friend of ours and um, he thinks it's time that you get activated on your sub-committee." Later in the same call, McClain directed Rita to conceal from a member of the Speaker's office staff who was working on the gaming bill that this direction came from Madigan ("Hey Bob you oughta, uh when you talk to Joe tell him that um, don't use Madigan's name, but tell him that it's time to start activating the subcommittee."). Government Exhibit 97 is a call between McClain and an individual named Tom Manion in which McClain told Manion, "I'm kind of um, um, I'm, I'm sort of Madigan's agent. . . . So, like th, the hearings that are goin' on that Bob Rita's running. Um, I'm, I'm guiding Bob on those hearings."

To be clear, the government does not intend to ask Rita questions about the substance of the gaming legislation, the purpose of the gaming legislation, or the result of the gaming legislation. Rather, the focus of the government's questions will be to elicit the information described above regarding Madigan and McClain's involvement in the gaming legislation.

**Argument**

A.   **The Gaming-Related Evidence is Highly Relevant Direct Evidence.**

McClain's role in the gaming legislation—including the directions he gave to Representative Rita on Madigan's behalf during the charged conspiracy—is evidence of McClain's close relationship with Madigan, McClain's actions as Madigan's agent, and Madigan's personal involvement in the legislation. This evidence helps to prove that McClain was also acting on Madigan's behalf in regards to the FEJA bill in December 2016. Without the evidence of McClain's prior direction and guidance to Rita on Madigan's behalf related to gaming, the jury will not fully understand the significance of McClain's meeting with Rita on December 1, 2016. Specifically, absent evidence concerning McClain's role in the gaming legislation (as well as wire interceptions demonstrating that McClain was guiding Rita as to the gaming legislation), the jury would have no context to understand why Rita would believe McClain was speaking for Madigan when McClain told Rita it was okay to adopt the last-minute FEJA amendment. It is highly relevant that Rita understood McClain to be acting *both* as a ComEd lobbyist *and* as an agent for Madigan during that conversation. The reason Rita developed this understanding is the critical link to understanding Rita's state of mind: McClain—who was not a public official—had been guiding Rita at Madigan's behest for more than three years regarding another major piece of legislation related to gaming. The work McClain did on Madigan's behalf in terms of gaming is thus direct evidence of the charged conspiracy, as this evidence helps to explain McClain's relationship with Madigan as his trusted agent

7

and advisor. *See, e.g., United States v. King*, 627 F.3d 641, 649 (7th Cir. 2010) (affirming admission of evidence that "helped establish the relationship among" gang members, "the rank of those men within the gang, and King's criminal intent").

Rita's interaction with McClain on December 1, 2016 is particularly relevant in light of the defense that Madigan took no action for ComEd in regard to FEJA. For example, defendant Pramaggiore's counsel stated during opening:

> You know, the government says Madigan supported this legislation. What does that mean? The evidence is going to show he didn't do anything to help this legislation get passed. He didn't help out ComEd.
>
> ***
>
> Not surprisingly, Madigan never supports – never sponsors [ComEd's] bills, doesn't help them find sponsors for their bills, doesn't talk to Democrats in the House of Representatives and tell them, "I'm going to vote for this ComEd bill. You should too." It never happens. In fact, he didn't even vote for the FEJA bill. Anne Pramaggiore was not bribing Mike Madigan.
>
> The government, as I said, says that Madigan supported their bills. Maybe he said a prayer for them. I don't know. But he didn't do anything to help those bills get passed in the legislature.

3/15/2023 Tr. at 364 & 367. The evidence described above directly refutes this defense theory and should be admitted.

Furthermore, during cross examination, defendant McClain's counsel elicited testimony that Madigan did not vote on FEJA, and that Madigan did not ask former Representatives Carol Sente or Scott Drury to vote in favor of FEJA. But Rita's anticipated testimony – and the recordings that show McClain's role as Madigan's agent – demonstrate that Madigan's support of legislation was often conveyed to

8

fellow legislators through intermediaries like McClain. The gaming evidence thus directly rebuts the defense theories and is highly relevant.

### B. The Gaming Evidence Is Not Unfairly Prejudicial.

Defendants claim that gaming is somehow prejudicial because there is stigma attached to sports wagering, casino gambling, and video gaming. Dkt. 142. It is apparent this argument is being used as a crutch to block the admission of highly probative evidence. Gambling is legal in Illinois and multiple casinos are located in northern Illinois. Sports betting websites are frequently advertised on television and other media. There is no stigma whatsoever along the lines defendants claim. Moreover, the government will not elicit any testimony about the substance of the legislation. The limited testimony and evidence about gaming that the government intends to elicit from Rita, as outlined above, is narrow in scope and would not prejudice the defendants, and certainly would not rise to the level of being unfairly prejudicial under Rule 403. The narrowly tailored evidence described above will not portray gaming legislation—or McClain's involvement—in an unsavory manner and will not be unfairly prejudicial. McClain's work as Madigan's agent with regard to two major pieces of legislation during the charged conspiracy is highly relevant, and its probative value far outweighs any potential prejudice.

### Conclusion

For the foregoing reasons, the government requests that the Court permit the government to elicit this limited testimony from Representative Rita regarding his experience with McClain in connection with gaming legislation, and permit the

9

government to admit and publish to the jury GX 94, GX 97, GX 105, GX 144, and GX156.

                                                Respectfully submitted.

                                                MORRIS PASQUAL,
                                                Acting United States Attorney

By:    */s/ Sarah Streicker*
        AMARJEET S. BHACHU
        DIANE MacARTHUR
        SARAH STREICKER
        JULIA K. SCHWARTZ
        Assistant U.S. Attorneys
        219 South Dearborn Street, Fifth Floor
        Chicago, Illinois 60604
        (312) 353-5300